UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

Sarah Schoper,                        )
                                      )
    Plaintiff,                        )
                                      )
                                      )   Case No.: 20-cv-04232
vs.                                   )
                                      )   Equitable Relief Sought
Board of Trustees of Western          )
Illinois University,                  )
                                      )
    Defendant.                        )

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff in this case, Sarah Schoper, complains against Defendant as follows:

1. Plaintiff Sarah Schoper lives at 836 Beverly Avenue, in Macomb, Illinois. She received a PhD counseling and personnel services from the University of Maryland in August 2011. From August 2011 to June 30, 2018, she was employed as an Assistant Professor in the Department of Education Studies in the College of Education at Western Illinois University ("the University"). She taught at the campus of the University located in Macomb, Illinois.

2. The Defendant Board of Trustees of Western Illinois University governs Western Illinois University. The University has campuses in Macomb, Illinois, and Rock Island, Illinois, both of which are within this judicial district.

3. Dr. Schoper filed an EEOC charge in this case on February 21 2018. She received a "right to sue" letter from the EEOC on August 21, 2020. That letter is attached as Exhibit "A." This court has jurisdiction of this cause under 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. § 1331 and

28 U.S.C.§1337.

4. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391. Since this case arose in McDonough County, it is in the Rock Island Division of the Court.

5. When Dr. Schoper was hired by the University in 2011, she was hired into a "tenure track position." This means that if she met certain criteria set by the University, she would be eligible to be awarded tenure by the Board of Trustees. The tenure process usually requires faculty members to apply for tenure in the sixth year of their employment. In most cases, faculty members hired into tenure track positions also receive an extra, "terminal year," of employment if they do not receive tenure.

6. The criteria for tenure at the University require faculty members to meet certain standards in the areas of teaching and student instruction, research and scholarship and university and professional service.

7. During the period from the time of her hire in August 2011 until the end of 2014, Dr. Schoper received exemplary reviews of her instruction, her scholarship and her university service.

8. On January 6, 2015, Dr. Schoper suffered a traumatic brain injury involving a pulmonary embolism, cardiac arrest, seizure, and stroke. She collapsed in the doorway of McDonough District Hospital and was airlifted to an intensive care unit at St. Francis Hospital in Peoria. She was pregnant at the time. She almost died, and she lost the baby as well.

9. Dr. Schoper spent 46 days in the hospital in Peoria. After her release, she spent weeks in rehabilitation in Macomb. Dr. Schoper's traumatic brain injury has impaired her mobility. It has also left her with neurological deficits with respect to her range of perception and her ability

to quickly recall words. While Dr. Schoper's physical strength and intelligence allow her to cope with these impairments, the energy and determination needed to partially mitigate their effects often leave her severely fatigued.

10. Dr. Schoper's physicians have advised her that the genetic factors that contributed to her seizure, embolism and stroke would make it extremely dangerous for her to become pregnant again.

11. In the five years since her traumatic brain injury, Dr. Schoper's condition has steadily improved. Nonetheless, she still suffers from the traumatic brain injury and its after effects, and is a qualified individual with a disability as defined by the American with Disabilities Act.

12. Dr. Schoper was unable to perform her duties at the University in the Winter semester of 2015. She received a leave of absence from the University for this time.

13. Dr. Schoper's physicians advised her that the best way to recover from her traumatic brain injury was to return to her position at the University. After careful consideration, Dr. Schoper determined that she was able to perform her duties. She taught an online class in the summer semester and had a full teaching load in the Fall 2015 semester. She also continued with her scholarship and with service activities, with a reduction in the amount of time she devoted to service.

14. Dr. Schoper applied for tenure in the Fall of 2016, which was her sixth year of employment at the University. The University President denied her application on May 1, 2017 2017. He determined that Dr. Schoper met the University's criteria for tenure in scholarship, and in university and professional service, but that she did not meet the University's criteria in instruction.

15. The University uses several measures to determine teaching excellence, including faculty peer observations, department chair observations, student evaluations, and the review of the syllabi used for classes.

16. The rating scale for peer and chair observations runs from zero to five. A rating above 4 is "superior." Superior teaching is required for tenure. In 2015 and 2016, Dr. Schoper consistently received ratings above 4 on peer and chair observations of her teaching and therefore met the criteria for tenure.

17. Student evaluations contain a numerical rating system and allow student comments. The rating scale for the numerical rating system in student evaluations also runs from zero to five. A rating above 4 is "superior." Prior to her embolism and stroke, Dr. Schoper received very high teaching evaluation scores from students. The average over her first three and one-half years – the time preceding her traumatic brain injury – was 4.46. These evaluation ratings were sufficient for her to be "on track" to receive tenure. She also received many student comments that praised her teaching.

18. During the three semesters following her return from work from her traumatic brain injury Dr. Schoper received an average student evaluation rating of 3.84   During these three semesters, her evaluation ratings showed a consistent upward trend for all but one of her courses. The average of her student evaluation ratings for the summer and fall semesters of 2016 was 3.99.

19. During the three semesters from the Winter of 2017 through the end of her employment in 2018, Dr. Schoper received an average student evaluation rating of 4.31.

20. The University requires that an applicant for tenure have at least a 3.75 average in the

numerical student evaluation ratings to be awarded tenure.

21. Despite the impairments caused by her traumatic brain injury, Dr. Schoper was qualified to perform her duties as a faculty member at WIU.

22. When the University evaluated Dr. Schoper for tenure, it gave substantial weight to the temporary decline in student numerical ratings between the Fall of 2015 and end of 2016. It did not give any weight to the fact that her ratings for specific classes had improved over those three semesters.

23. When the University evaluated Dr. Schoper for tenure, it also gave weight to negative student comments about her teaching. These included comments about changes to her classroom procedures that she implemented to respond to her disabilities. The comments indicate that students rated Dr. Schoper negatively due to her disabilities and not due to her failure to communicate the substantive content of her courses. Dr. Schoper brought these comments to the attention of her supervisors on several occasions and the University took no action.

24. Dr. Schoper requested reasonable accommodations, including that the University consider the numerical student ratings she received on evaluations after the Fall of 2016 in evaluating her tenure application. The University refused this request. The University also refused to extend the period of time allowed for Dr. Schoper to seek tenure. Neither of these actions would have created any undue burden on the University. The failure of the University to consider or implement such actions violated the University's obligation to grant reasonable accommodations to faculty members with disabilities.

25. The University's reliance on the discriminatory comments of Dr. Schoper's students in the evaluation of her teaching constituted discrimination based on disability.

26. The comments of University representatives to Dr. Schoper during the tenure process demonstrated stereotypical and negative attitudes about her disability. For example, in discussions with Dr. Schoper, University representatives suggested that Dr. Schoper take a leave of absence from work or that she go on disability.

27. The University has granted tenure to non-disabled faculty members in the College of Education who had cumulative student evaluation ratings of less than Dr. Schoper's.

28. The University's discrimination based upon disability and failure to grant reasonable accommodations to Dr. Schoper prevented her from achieving tenure at the University. Consequently, Dr. Schoper was terminated on June 30, 2018. The University's unlawful denial of tenure will cost Dr. Schoper hundreds of thousands of dollars over the course of her career. The University's unlawful actions action have also made it virtually impossible for Dr. Schoper to continue her career in higher education. The University's discrimination and failure to provide reasonable accommodations have also caused unconscionable emotional distress to Dr. Schoper.

Wherefore, Dr. Schoper requests the following relief:

    a) a declaration that the University has violated her rights under the Americans with Disabilities Act;

    b) injunctive relief requiring the University to take actions that prevent discriminatory attitudes toward disabilities by students from being the basis of tenure and promotion decisions at the University;

    c) injunctive relief requiring the University to take action to make sure that it maintains an effective process for the reasonable accommodation of disabilities of faculty members in the promotion and tenure process;

      d) injunctive relief requiring the University to award tenure to Dr. Schoper;

      e) money damages, including damages for Dr. Schoper's economic losses and compensatory damages for the emotional distress caused by Defendant's discrimination;

      f) the reasonable costs and attorneys fees of bringing this lawsuit; and

      f) any other relief that is just and appropriate.

Respectfully submitted

/s/Stephen A. Yokich

Dowd, Bloch, Bennett, Cervone
      Auerbach & Yokich
8 S. Michigan, 19th Floor
Chicago, Illinois 60603
312-286-6723 (cell phone)
syokich@labor advocates.com

## REQUEST FOR TRIAL BY JURY

The plaintiff hereby requests trial by jury on all issues so triable.

Respectfully submitted

/s/Stephen A. Yokich

Dowd, Bloch, Bennett, Cervone
      Auerbach & Yokich
8 S. Michigan, 19th Floor
Chicago, Illinois 60603
312-286-6723 (cell phone)
syokich@labor advocates.com